IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02950-MSK-MEH

LISA M. JOHNSON,

      Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF COLORADO, and
BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 1,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendants' Motion to Dismiss First Amended Complaint [filed December 17, 2012; docket #21]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #31]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court respectfully RECOMMENDS that the Motion to Dismiss be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

Plaintiff Lisa Johnson (Johnson) initiated this action on October 12, 2012 in Denver County District Court against School District No. 1 in the County of Denver and State of Colorado ("District") and the Board of Education of School District No. 1 ("Board") (collectively "Defendants"). (Docket #4.)  On November 9, 2012, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a) governing federal question jurisdiction.  (Docket #1.)  Then, pursuant to Fed. R. Civ. P. 15(a), Plaintiff filed a First Amended Complaint and Jury Demand on December 4, 2012.

## I.    Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by Johnson in her First Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Plaintiff, Lisa Johnson, has been employed as a teacher by Defendant School District No. 1 since 1991.  Johnson has taught grades 3, 4 and 5, including third through fifth grade combination classes.  She has taught classes consisting of both special education and regular education students, and classes that included both English Language Learners ("ELLs" - students learning English as a second language) and English-speaking students.

From 1993 until April 2008, Johnson was employed in a continuing assignment as a teacher at Godsman Elementary School.  Johnson's performance has been repeatedly evaluated pursuant to the District's evaluation process, a process that consists of a formal evaluation every three years and informal evaluations during the other two "off-cycle" years.  Prior to the 2007-08 school year, all

2

of Johnson's formal and informal evaluations were uniformly positive.  Specifically, Johnson received approximately 15 evaluations prior to the 2007-08 school year, each containing a number of individual ratings on different performance standards, and none contained a single rating of "unsatisfactory" or "needs improvement" on any performance standard in any evaluation.  All of her ratings on all standards in these 15 evaluations were at least satisfactory, and she received numerous ratings of "outstanding" and "exceeds expectations."

On or about June 19, 2008, the Defendant District, acting through its superintendent and administrators, issued a written recommendation to dismiss Johnson from her employment with the District pursuant to the Teacher Employment, Compensation and Dismissal Act ("TECDA").  The majority of teachers who are recommended for dismissal by the Defendant District do not contest their dismissal in a TECDA hearing, but instead resign from their employment prior to the hearing.

The case was assigned for hearing to Administrative Law Judge ("ALJ") Michelle Norcross of the State of Colorado Office of Administrative Courts.  On October 27-31 and November 3-7, 2008, ALJ Norcross conducted a TECDA evidentiary hearing, which lasted almost seven full days.  During the hearing, the ALJ heard the testimony of six District witnesses and admitted into evidence all or parts of 20 District exhibits.  ALJ Norcross also heard Johnson's testimony and the testimony of seven witnesses called by Johnson, and admitted into evidence all or parts of 25 exhibits offered by Johnson.

On December 16, 2008, ALJ Norcross, pursuant to TECDA, issued a 26-page Recommended Decision, in which she made detailed findings of fact and conclusions of law, as well as a recommendation regarding Johnson's future employment.  Specifically, ALJ Norcross found that "The evidence establishes that [Assistant Principal Christina] Schott did not follow approved District

processes and procedures when she evaluated Ms. Johnson and put her on a (remediation) plan" and that Johnson had not committed any of the alleged grounds for dismissal – *i.e.*, unsatisfactory performance, insubordination, neglect of duty, or other good and just cause for dismissal.  Further, ALJ Norcross recommended that Johnson be retained as a teacher by the District.

On January 15, 2009, the Board entered a written order retaining Johnson as a teacher on a one-year probation.

After a medical leave of absence for essential surgery, Johnson returned to work as a teacher in the District approximately two weeks before the end of the 2008-09 academic year.  She was placed in a temporary assignment at Gust Elementary School for those two weeks.  The District then assigned Johnson to work as a reading intervention teacher at Gust Elementary School for the 2009-10 school year, and informed Johnson at the outset of the assignment that it was for one school year only.

In the Colorado legislative session commencing in January 2010, a bill to amend TECDA was introduced and designated as Senate Bill 191 (2010).  The bill would amend TECDA to enable school districts to terminate the employment of teachers more easily and without following the dismissal procedures, including the hearing process provided in TECDA, specifically C.R.S. § 22-63-302.  The Defendants, as well as most school districts and school boards in Colorado, strongly supported Senate Bill 191.  The Colorado Education Association ("CEA") and the Denver Classroom Teachers' Association ("DCTA"), the state-wide and district-wide teachers' unions, respectively, strongly opposed the bill.  Johnson is and has been a member of the CEA and DCTA at all times relevant to this case.

On or about May 6, 2010, Johnson, at the request of CEA/DCTA, testified before the

Colorado House of Representatives Education Committee in opposition to Senate Bill 191. In her testimony, Johnson stated that she had been the subject of an unjustified dismissal recommendation by the Defendants, which almost cost her the teaching career that she loved; that TECDA entitled her to a hearing, where she had the opportunity to present evidence showing that the allegations against her were inaccurate and unjustified; and that, if school districts are permitted to terminate the employment of teachers without a hearing, good teachers could lose their careers based upon inaccurate and unjustified allegations that are never reviewed by any independent, objective fact finder.

Many individuals testified before the Colorado Legislature regarding Senate Bill 191, both in support of and in opposition to the bill. However, Johnson is the only teacher who had been the subject of a TECDA dismissal proceeding who testified regarding Senate Bill 191. Further, Johnson is the only then-current District teacher who testified against the bill, which was strongly supported by the District.

On May 9, 2010, a column entitled, "Tenure war lacks clear way out," written by Denver Post columnist Susan Greene, was published on the "op-ed page" of the Denver Post newspaper. The column discussed Johnson and her TECDA dismissal proceeding in response to her testimony in the Colorado Legislature. The column presented factually inaccurate statements and unjustified/ unsupported conclusions about Johnson, her performance as a teacher and her dismissal proceeding. The column depicted Johnson as an ineffective teacher, who was tired of teaching and who failed to "reach" almost all of her students. The column indicated that Johnson prevailed in her dismissal hearing, not because the allegations against her were unjustified or untrue, but because it was unreasonably difficult for school districts to dismiss teachers successfully under Colorado law.

The inaccurate information and erroneous conclusions about Ms. Johnson and her performance as a teacher contained in the Denver Post column were provided to Susan Greene by District administrators after Ms. Johnson testified against Senate Bill 191.  Greene may have reviewed the ALJ's Recommended Decision, but the statements and conclusions contained in her column are not based upon that decision.  Greene did not review the administrative record of Johnson's dismissal proceeding; rather, she communicated with, and obtained material for her column from, District administrators and individuals to whom she was directed by District administrators.

Because Johnson had been told that her assignment at Gust Elementary School was for the 2009-10 school year only, she attempted to obtain a teaching assignment in the District during the spring semester of the 2009-10 school year and into June 2010, for the following and subsequent school years, through the District's school-based hiring process.  Johnson reviewed the job postings on the District's website and applied for all or virtually all teaching positions for which she was qualified.  Johnson applied for dozens of positions at a minimum and, to the best of her recollection and belief, as many as 50 to 75 positions.  To the best of her recollection and belief, Johnson was not asked to interview for any of the positions for which she applied, which would have been the next step in the hiring process.

Johnson also attended a District job fair in an attempt to obtain a teaching assignment.  At the job fair, where attendees had the opportunity to interview for available positions on the spot, Johnson interviewed for all available positions for which she was qualified; however, she was not offered a single position.

On May 20, 2010, Senate Bill 191 was enacted into law and became effective immediately.

On or about June 28, 2010, the District placed Johnson in her same assignment as a reading intervention teacher at Gust Elementary School for the 2010-11 school year.  Once again, Johnson was informed by the District at the outset that this assignment was for one school year only.  As in the previous year, during the spring semester of the 2010-11 school year and into June 2011, Johnson attempted to obtain a teaching assignment in the District for the following and subsequent school years through the District's school-based hiring process.  Johnson reviewed the job postings on the District's website and applied for all or virtually all teaching positions for which she was qualified.  Johnson applied for dozens of positions at a minimum and, to the best of her recollection and belief, as many as 50 to 75 positions. To the best of her recollection and belief, Johnson was not asked to interview for any of the positions for which she applied, which would have been the next step in the hiring process.

Also, Johnson again attended a District job fair in an attempt to obtain a teaching assignment. At the job fair, where attendees had the opportunity to interview for available positions on the spot, Johnson interviewed for all available positions for which she was qualified; however, she was not offered a single position.

On or about June 10, 2011, the District assigned Johnson to work as a special education teacher at Greenwood Elementary School for the 2011-12 school year.  Once again, Johnson was informed by the District at the outset that this assignment was for one school year only.  As in the previous two years, during the spring semester of the 2011-12 school year and into the fall of 2012, Johnson attempted to obtain a teaching assignment in the District for the following and subsequent school years through the District's school-based hiring process.  Johnson reviewed the job postings on the District's website and applied for all or virtually all teaching positions for which she was

qualified, totaling approximately 71 positions.  To the best of her recollection and belief, Johnson was not asked to interview for any of the positions for which she applied, which would have been the next step in the hiring process.

Once again, Johnson attended one or more District job fairs in an attempt to obtain a teaching assignment.  At the job fairs, where attendees had the opportunity to interview for available positions on the spot, Johnson interviewed for all available positions for which she was qualified; however, she was not offered a single position.

On or about July 2, 2012, Johnson was notified in writing by the District that, if she did not obtain a teaching assignment through the school-based hiring process by August 26, 2012, she would be placed on "unpaid leave status" effective September 1, 2012.  Despite her efforts, Johnson was unable to obtain a teaching assignment through the school-based hiring process and was, therefore, placed on unpaid leave by the District effective September 1, 2012.  Johnson was not provided with a TECDA dismissal hearing, nor any opportunity to be heard, prior to the Defendants' action placing her on unpaid leave and depriving her of her salary and employment benefits.

One or more documents containing negative statements and opinions about Johnson and her performance as a teacher has/have been maintained by the District and made available to the principals of the schools where Johnson applied for teaching assignments.  These documents include one or more negative references written by Johnson's former DPS administrator(s).  In addition, the evaluation and remediation plan documents prepared by the Godsman Elementary School Assistant Principal in 2007-08 remain in Johnson's official District personnel file. The ALJ's Recommended Decision in favor of Johnson is not included in that file.  That file is accessible to District administrators, including school principals.

In the summer 2012, Johnson was informed by the principal of a school at which she applied for a teaching assignment that she was still listed on the District's website as being employed at Greenwood Elementary School. The principal stated that this was a reason why Johnson was not selected for an interview for the position at her school. In fact, Johnson was still listed as being employed at Greenwood Elementary School on the employee-accessible portion of the District's website as late as September 26, 2012.

## II.    Procedural History

After removal of the action to this Court, Defendants filed a motion to dismiss the complaint (*see* docket #10), then, upon Johnson's filing the operative amended complaint as a matter of course, this Court denied without prejudice the pending motion to dismiss. (Docket #15.)

Defendants filed the present motion to dismiss the First Amended Complaint on December 17, 2012. Essentially, Defendants argue Johnson fails to state a First Amendment retaliation claim with respect to her dismissal hearing in 2008, because Johnson's participation in the hearing is not protected activity and Johnson fails to allege sufficient facts to meet the other requirements for the claim. In addition, Defendants contend Johnson does not allege facts sufficient to demonstrate a property interest required for her due process claim. Finally, Defendants assert that Johnson fails to allege sufficient facts demonstrating that they failed to perform the contract pursuant to TECDA.

Johnson counters that Defendants failed to perform the TECDA contract by failing to retain her in a continuing assignment after she prevailed in her dismissal proceeding and by placing her on unpaid administrative leave when she failed to obtain a "mutual consent" continuing position in 2012. Johnson also argues the Defendants seek dismissal of her First Amendment retaliation claim based upon an incorrect legal theory and asserts that her allegations meet the requirements of the

"*Garcetti-Pickering*" five-part test for analyzing such claim.  Finally, Johnson contends that she possesses a property interest in her continued salary and benefits of her nonprobationary employment pursuant to TECDA.

Defendants reply that their legal theory regarding Johnson's First Amendment retaliation claim is correct and that she fails to state facts sufficient to demonstrate adverse actions that would chill a person from engaging in protected activity or that support a plausible claim.  Further, Defendants argue Johnson fails to plead an official custom, policy or practice as required for municipal liability under 42 U.S.C. § 1983.  Defendants also repeat that Johnson alleges no property interest in her salary and benefits, as necessary for her due process claim.  Finally, Defendants repeat their contentions that certain of Johnson's claims are barred by the statute of limitations and that she fails to allege sufficient facts to support her breach of contract claim.

The Court has reviewed the operative pleading, the motion, the briefs and the applicable law, and is sufficiently advised in the premises.

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id. Twombly* requires a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 678-80.  Second, the Court must consider the factual

10

allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

11

<u>ANALYSIS</u>

Defendants argue that Johnson fails to state claims for retaliation in violation of the First Amendment, for violation of the Due Process clause of the Fourteenth Amendment, and for breach of contract.  Keeping the applicable legal standards in mind, the Court will analyze each of these claims in turn.

## I.      First Amendment Retaliation

The parties dispute the applicable test for determining whether an employee has demonstrated sufficient facts to state a First Amendment retaliation claim.  Defendants seem to argue that both the "*Garcetti/Pickering*" analysis and the "chill a person of ordinary firmness"[2] analysis should be considered in determining whether Plaintiff's retaliation claims should be dismissed.  The Court is not convinced that both apply; in fact, in *Shero v. City of Grove*, the Tenth Circuit stated, "[i]n *Worrell v. Henry*, we considered the elements necessary for a retaliation claim where the governmental defendant is ***not the plaintiff's employer*** nor a party to a contract with the plaintiff" and proceeded to apply the "chill" analysis to the non-employee plaintiff's claim in that case.  510 F.3d 1196, 1203 (10th Cir. 2007) (emphasis added).  Because Johnson is an employee of the Defendants in this case, the Court will apply the "*Garcetti/Pickering*" test to the present claims.  *See Couch v. Bd. of Trustees of Memorial Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1235 (10th Cir. 2009) ("[w]hen analyzing a free speech claim based on retaliation by an employer, this

---

[2]Three elements a plaintiff must prove to establish a First Amendment retaliation claim are: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

court applies the five-prong *Garcetti/Pickering* test") (citing *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301-02 (10th Cir. 2009)).

Because "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern ... a public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech." *Id.* (citations omitted). The *Garcetti/Pickering* analysis provides,

> First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Id.* (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007) (internal quotations, citations and alterations omitted). The first three steps are to be resolved by the court, and the last two ordinarily by the trier of fact. *Brammer-Hoelter*, 492 F.3d at 1203. "Implicit in the [*Garcetti/*]*Pickering* test is a requirement that the public employer have taken some adverse employment action against the employee." *Couch*, 587 F.3d at 1235-36.

Defendants argue that Johnson's participation in her own dismissal hearing was not on a matter of public concern and that Johnson's alleged adverse actions are either time-barred or do not rise to the level of an adverse employment action under the First Amendment. The Court will

address each argument in turn.

A.    Matter of Public Concern

The Tenth Circuit in *Brammer-Hoelter* set forth the standards for determining whether speech touches on a matter of public concern:

> Matters of public concern are those of interest to the community, whether for social, political, or other reasons. In determining whether speech pertains to a matter of public concern, the court may consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest. Statements revealing official impropriety usually involve matters of public concern. Conversely, speech that simply airs grievances of a purely personal nature typically does not involve matters of public concern. In deciding what is a matter of public concern, we are required to consider the content, form, and context of a given statement, as revealed by the whole record.

492 F.3d at 1205 (internal quotations and citations omitted).  Defendants argue that Johnson's participation in her own dismissal hearing constituted speech that was merely "personal in nature," but Johnson contends that testimony to an adjudicative body can be protected speech regardless of its content.

The Tenth Circuit has held "that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, disputes over the term of employment, and workplace frustration." *Id.* (citations omitted).  Further, in *Workman v. Jordan*, the Tenth Circuit, citing *Connick v. Myers*, 461 U.S. 138 (1983), found that "speech relating to internal personnel disputes is not regarded as a matter of public concern" and determined that a county sheriff's employee spoke on matters of a "personal nature" when, in a post-termination hearing, the employee testified that the sheriff's department tolerated a sexist environment only to convince the factfinder that his conduct was not anomalous and did not support termination of his employment.  32 F.3d 475, 482-83 (10th Cir. 1994).

14

Here, Johnson argues that "[t]he legal proceeding in which Ms. Johnson testified and opposed the dismissal recommendation was not a mere grievance proceeding established pursuant to a collective bargaining agreement or an employer policy, as was the case in *Workman*.  Rather, the legal proceeding in the instant case was a statutory proceeding established by the Colorado Legislature and conducted by a State of Colorado Administrative Law Judge."  Response brief, docket #26 at 11.  However, in *Workman*, after the plaintiff was terminated from his employment, he

> appealed his termination through the Weld County grievance procedure and was granted a posttermination hearing. This hearing was conducted by an impartial Hearing Officer, and Captain Workman was represented by an attorney. The attorney presented evidence on Captain Workman's behalf, made arguments, and examined and cross-examined witnesses.
>
> The Hearing Officer issued a seven-page "Findings of Fact, Conclusions and Decision." The Hearing Officer concluded "[s]ome of Captain Workman's comments were vulgar, sexist, inconsiderate and inappropriate in the workplace"; however, his "actions did not rise to the level of sexual harassment by any definition available to the Hearing Officer." The Hearing Officer reversed the termination and granted reinstatement with full back pay.

32 F.3d at 477-78.  In this case, Johnson alleges that

> On October 27-31 and November 3-7, 2008, ALJ Norcross conducted a TECDA evidentiary hearing, which lasted almost seven full days.  During the hearing, the ALJ heard the testimony of six District witnesses and admitted into evidence all or parts of 20 District exhibits.  ALJ Norcross also heard Johnson's testimony and the testimony of seven witnesses called by Johnson, and admitted into evidence all or parts of 25 exhibits offered by Johnson.
>
> On December 16, 2008, ALJ Norcross, pursuant to TECDA, issued a 26-page Recommended Decision, in which she made detailed findings of fact and conclusions of law, as well as a recommendation regarding Johnson's future employment.

Johnson does not specify how Workman's proceeding was a "mere" grievance proceeding compared with her own; thus, the Court is not persuaded that *Workman*'s opinion is distinguishable here.

Johnson also argues that the Tenth Circuit has favorably discussed cases from other appellate courts holding that truthful testimony in various types of legal proceedings is constitutionally protected.  However, the court in *Workman* distinguished two cases upon which Johnson relies – *Langley v. Adams Cnty.*, 987 F.2d 1473 (10th Cir. 1993) and *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565 (5th Cir. 1989) – concluding that they involved testimony by co-workers rather than by the employee on his own behalf.  *Workman*, 32 F.3d at 483.  Another case on which Johnson relies – *Pro v. Donatucci*, 81 F.3d 1283 (3d Cir. 1996) – also involves the testimony of a co-worker at an employee's divorce proceeding.  The Court finds Johnson's cases distinguishable from her circumstances under which she testified on her own behalf in an effort to overturn a dismissal recommendation.

Accordingly, in light of *Brammer-Hoelter* and *Workman*, the Court recommends that the District Court find Johnson has failed to allege a First Amendment retaliation claim based upon her participation in her own dismissal hearing, and grant Defendants' motion to dismiss such claim.

      B.    <u>Adverse Employment Actions</u>

Johnson also alleges a First Amendment retaliation claim based upon her May 6, 2010 testimony before the Colorado House of Representatives Education Committee in opposition to Senate Bill 191.  Defendants do not dispute that Johnson's testimony was protected activity; rather, they argue that Johnson fails to allege sufficient facts demonstrating that Defendants' conduct rises to the level of adverse employment actions under the First Amendment.

The Tenth Circuit has concluded that, under the fourth prong of the *Garcetti/Pickering* test, a plaintiff must allege sufficient facts demonstrating an adverse employment action.  *Couch*, 587 F.3d at 1236.  "[A]n adverse action for purposes of retaliation under the First Amendment can be

16

broader than adverse actions in the Title VII discrimination context." *Id.* at 1237.  For example, promotions, transfers, recalls after layoff, hiring decisions, forbidding teachers to speak with parents about school matters, blacklisting teachers from future employment, removing an employee's job duties, issuing written reprimands, giving poor performance evaluations and transferring an employee can all be actionable in the First Amendment context.  *Id.* Consequently, courts should determine whether the defendant's specific actions would "deter a reasonable person from exercising his First Amendment rights."  *Id.* at 1238 (quoting *Brammer-Hoelter*, 492 F.3d at 1208) (internal ellipsis omitted).

Johnson contends that the Defendants undertook the following adverse actions against her in retaliation for her First Amendment protected activity:

(1) Interfered with Ms. Johnson's ability to obtain, and prevented her from obtaining, a "mutual consent" teaching assignment through the school-based hiring process – Spring Semester of 2009-10 until June 2010. (Complaint, paragraphs 25, 33-35);

(2) Placed Ms. Johnson in a temporary, one year-only assignment – on or about June 28, 2010. (Complaint, paragraph 27);

(3) Interfered with Ms. Johnson's ability to obtain, and prevented her from obtaining, a "mutual consent" teaching assignment through the school-based hiring process – Spring Semester of 2010-11 until June 2011. (Complaint, paragraphs 28, 33-35);

(4) Placed Ms. Johnson in a temporary, one year-only assignment – on or about June 10, 2011. (Complaint, paragraph 29);

(5) Interfered with Ms. Johnson's ability to obtain, and prevented her from obtaining, a "mutual consent" teaching assignment through the school-based hiring process – Spring Semester of 2011-12 until Fall of 2012. (Complaint, paragraphs 30, 33-35); and

(6) Placed Ms. Johnson on an involuntary leave of absence without pay or benefits – effective September 1, 2012. (Complaint, paragraph 32).

Response brief, docket #26 at 14-15.

Certainly, any allegations here concerning adverse actions that took place *prior* to Johnson's May 2010 testimony would not suffice.  *Sheker v. Grimes*, 56 F.3d 78, 1995 WL 330749, at *3 (10th Cir. June 5, 1995) ("Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech.") (quoting *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir. 1993)).  Thus, the Court will consider only those alleged actions that occurred *after* Johnson's May 6, 2010 testimony.

### 1.   Conduct Occurring Prior to October 12, 2010

Johnson alleges that, in response to her testimony, Defendants placed her in a temporary, one year-only assignment on or about June 28, 2010, and interfered with her ability to obtain, and prevented her from obtaining, a "mutual consent" teaching assignment through the school-based hiring process for the spring semester of 2009 through June 2011.

Defendants argue any alleged conduct that occurred prior to October 12, 2010 – two years before Johnson initiated this action – is barred by the statute of limitations.  "Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules ...."  *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)) (quotations omitted).  The limitations period applicable to this § 1983 suit is Colorado's two-year statute of limitations which bars suits filed more than two years after the time the cause of action accrued.  *Id.* (citing *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993); *see also* Colo. Rev. Stat. § 13-80-102.  "A § 1983 action 'accrues when facts that would support a cause of action are or should be apparent.'"  *Fogle*, 435 F.3d at 1258 (quoting *Fratus v. DeLand*, 49 F.3d 673, 674-75 (10th Cir. 1995)).  Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when a complaint indicates on its face that the statute of limitations has expired.  *Aldrich v.*

*McCullouch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

Johnson does not dispute that her action is subject to the two-year statute of limitations; thus, because she initiated this action on October 12, 2012, any claims seeking recovery for conduct that occurred prior to October 12, 2010 are time-barred.  There is no dispute that any claim based upon the Defendants placing Johnson in a temporary, one year-only assignment accrued on June 28, 2010, the day it happened.  Likewise, any interference with Johnson's ability to obtain a mutual consent position (i.e., rejecting Johnson for a position for which she applied) would have accrued the day it happened.  Therefore, the Court recommends that the District Court find Johnson's First Amendment claims based upon alleged adverse actions that occurred prior to October 12, 2010 are barred by the statute of limitations, and grant Defendants' motion to dismiss such claims.

2.      "Interference" with Mutual Consent Position after October 12, 2010

Defendants argue that Johnson has failed to plead specific facts supporting her claim that the Defendants interfered with her ability to obtain a mutual consent position.  Defendants also contend that Johnson fails to allege the Defendants acted pursuant to a policy or custom, or that the interference was done by the Board, which is the final policymaker for the District.  Johnson counters that she need not plead specific facts regarding municipal liability, and has pled sufficient facts demonstrating Defendants' interference.

With respect to municipal liability claims, courts may not apply a heightened pleading standard when analyzing whether such claims should be dismissed; rather, the usual pleading requirements of Fed. R. Civ. P. 8(a) apply.  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2). This rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). Determining whether the allegations in a complaint are "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[ ] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.* The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the ground upon which it rests." *Khalik*, 671 F.3d at 1191.

School districts are municipal entities for purposes of claims pursuant to 42 U.S.C. § 1983. *See Harris v. Robinson*, 273 F.3d 927, 932 (10th Cir. 2001). Persons may sue municipal entities under § 1983 "only for their ***own*** illegal acts." *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (internal quotation and citations omitted) (emphasis in original). Thus, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Rather, to establish a § 1983 claim against a municipality, "a plaintiff must show (1) the existence of a municipal policy or custom, and (2) that there is a direct causal link between the policy or custom and the injury alleged." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989)). In establishing the first requirement, a plaintiff may show a municipal policy or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler*, 602 F.3d at 1189-90) (internal quotations omitted).

Johnson contends that the Defendants' "interference" with her ability to obtain a mutual consent position is set forth in the following allegations:

> One or more documents containing negative statements and opinions about Johnson and her performance as a teacher has/have been maintained by the District and made available to the principals of the schools where Johnson applied for teaching assignments. These documents include one or more negative references written by Johnson's former DPS administrator(s). In addition, the evaluation and remediation plan documents prepared by the Godsman Elementary School Assistant Principal in 2007-08 remain in Johnson's official District personnel file. The ALJ's Recommended Decision in favor of Johnson is not included in that file. That file is accessible to District administrators, including school principals.

> In the summer 2012, Johnson was informed by the principal of a school at which she applied for a teaching assignment that she was still listed on the District's website as being employed at Greenwood Elementary School. The principal stated that this was a reason why Johnson was not selected for an interview for the position at her school. In fact, Johnson was still listed as being employed at Greenwood Elementary School on the employee-accessible portion of the District's website as late as September 26, 2012.

*See* Response brief, docket #26 at 15. Johnson claims that these allegations are sufficient under Rule 8(a), and cites both *Leatherman* and *Evans v. McKay*, 869 F.2d 1341, 1349 (9th Cir. 1989) to support her argument. However, in both of these cases, the courts cite to *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) for the proposition that "[i]t is improper

to dismiss on the pleadings alone a section 1983 complaint alleging municipal liability, even if the claim is based on nothing more than a bare allegation that the individual officers' conduct **conformed to official policy, custom or practice**." *Evans*, 869 F.2d at 1349 (emphasis added); *see also Leatherman*, 507 U.S. at 165.

Even if *Evans* applied in this Circuit, there is no mention in the First Amended Complaint of any policy, custom or practice, nor any formal regulation or statement, no widespread practice, no indication that the alleged conduct was taken by the Board (final policymaker), no ratification by the Board of subordinates' decisions to take the actions, and no indication that Defendants failed to train or supervise employees.  Johnson does not cite to any portion of her pleading which might set forth or imply the Defendants acted pursuant to an official policy, custom or practice.  As such, Johnson has failed to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Accordingly, the Court recommends the District Court find Johnson has failed to state plausible First Amendment claims based upon Defendants' alleged "interference" with Johnson's ability to obtain a mutual consent position after October 12, 2010.

3.      Placement on One-Year Assignment in June 2011

Johnson alleges that "[o]n or about June 10, 2011, the District assigned Johnson to work as a special education teacher at Greenwood Elementary School for the 2011-12 school year. Once again, Johnson was informed by the District at the outset that this assignment was for one school year only."  As set forth above, Johnson fails again to allege the Defendants acted to an official policy, custom or practice.  Thus, the Court recommends the District Court find Johnson has failed to state a plausible First Amendment claim based upon Defendants' conduct in placing her on a one-

year assignment in June 2011.

               4.       Placement on Unpaid Leave in Fall 2012

Defendants do not challenge this claim based upon *Monell*; rather, Defendants claim that they were required by statute to place Johnson on unpaid leave and, thus, the placement does not rise to the level of an adverse action.  Johnson counters that the statute, by its plain language, does not apply to her.

Johnson alleges that,

> The Defendants have stated that they were required to place Ms. Johnson on unpaid leave pursuant to certain provisions of Senate Bill 191, which were enacted into law as C.R.S. § 22-63-202(2)(c.5). Specifically, Subpart c.5 limits the ability of school districts to assign displaced teachers to positions unless the teachers are selected through a school-based hiring process and thereby have the "mutual consent" of the hiring schools.  However, Subpart c.5, by its own clear language, applies only to teachers who are "displaced as a result of a drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation, or reconstitution." C.R.S. § 22-63-202(2)(c.5)(VII). Ms. Johnson was not displaced from her continuing, school-based hiring/"mutual consent" position at Godsman Elementary School as a result of any of these causes. Rather, she was displaced due to an unjustified recommendation for her dismissal. Therefore, the limitations contained in § 22-63-202(2)(c.5) are not applicable to Ms. Johnson's placement.

First Amended Complaint, ¶ 36, docket #13-1 at 15.  Defendants argue that, because Johnson was unable to secure a "mutual consent" position in 2012, they were required by Colo. Rev. Stat. § 22-63-202(2)(c.5)(IV) to place Johnson on unpaid leave, and that the subsection does, in fact, apply to Johnson as it does to any "nonprobationary teacher."  Specifically, Defendants claim the statute, when read in conjunction with the other subsections, clearly applies to all nonprobationary teachers and Johnson's interpretation would "lead to a nonsensical result."  Reply, docket #35 at 22.  Johnson responds that subsection 202(2)(c.5)(VII) specifically provides to whom paragraph c.5 applies and, thus, the plain language of the statute demonstrates the limitation of subsection 202(2)(c.5) to certain

circumstances not her own.

"When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, they must endeavor to predict how the high court would rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). Here, the parties agree that subsection 202(2)(c.5) went into effect in May 2010; the parties have cited no Colorado cases interpreting this subsection and the Court has found none. Consequently, the Court must "interpret state laws according to state rules of statutory construction, and therefore interpret [a] statute based on its plain language." *Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005).

Colorado courts "give effect to the intent of the legislature" when interpreting statutes. *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 799 (Colo. 2000). "We look to the language of the statute, giving words their plain and ordinary meaning ... [i]f the plain language of the statute demonstrates a clear legislative intent, we look no further in conducting our analysis." *Id.*; *see also Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1218 (D. Colo. 2012) ("When interpreting a statute, the Court begins by examining its plain language, and if the statutory language is clear, the Court's analysis is at an end.") (citing *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008)).

Here, Johnson argues subsection 202(2)(c.5)(IV) does not apply to her because of the plain language of subsection 202(2)(c.5)(VII). Subsection 202(2)(c.5)(IV) provides,

> If a nonprobationary teacher is unable to secure a mutual consent assignment at a school of the school district after twelve months or two hiring cycles, whichever period is longer, the school district shall place the teacher on unpaid leave until such time as the teacher is able to secure an assignment. If the teacher secures an assignment at a school of the school district while placed on unpaid leave, the school district shall reinstate the teacher's salary and benefits at the level they would have been if the teacher had not been placed on unpaid leave.

24

Subsection 202(2)(c.5)(VII) provides,

> This paragraph (c.5) shall apply to any teacher who is displaced as a result of drop in enrollment; turn-around; phase-out; reduction in program; or reduction in building, including closure, consolidation, or reconstitution.

Notably, the Defendants do not dispute that Johnson does not fall within the parameters of subsection 202(2)(c.5)(VII); rather, they contend that subsection 202(2)(c.5)(IV) applies to all nonprobationary teachers, including Johnson, in Colorado.  Johnson counters that the rule, "the expression of one excludes the other," applies here and demonstrates that subsection 202(2)(c.5)(IV) is applicable only to those teachers described in subsection (VII).

Keeping the applicable legal principles in mind, the Court concludes that the plain language of subsection 202(2)(c.5), read as whole, demonstrates that subsection 202(2)(c.5)(IV) applies to all nonprobationary teachers in Colorado.  For example, in subsection 202(2)(c.5)(I), the statute refers to "teachers" without any reference to teachers who have been displaced as set forth in subsection (VII).  Likewise, subsections (II)(A) and (III)(A)[3] refer to "any active nonprobationary teacher" whose performance was deemed "effective" the prior school year would be placed in a priority hiring pool.  However, subsections (II)(B) and (III)(B) specifically refer to teachers who have been displaced as set forth in subsection (VII), setting forth requirements for notifying such displaced teachers of their removal from the school and of vacant positions in the district.  If the statute were to be construed as Johnson suggests, then there would be no need for the legislature to carve out these specific requirements for teachers displaced as set forth in subsection (VII).

Moreover, Johnson states "[i]f paragraph (c.5) is interpreted to apply to all teachers, then

---

[3]The Court notes that the fact that subsection (II) is presently in effect and that subsection (III) will take effect in the future does not alter its analysis or findings in this matter.

subparagraph (VII) is entirely meaningless." Response brief, docket #26 at 6. The Court disagrees. Subsection (VII) defines "displaced" teachers for purposes of reading subsections (II)(B) and (III)(B). Further, Johnson suggests that to cure any "conflict" raised by a reading of other subsections of, or relating to, paragraph (c.5), the statute may be read such that the requirements of subsections (II) through (IV) only apply to displaced teachers defined in subsection (VII), while all other subsections apply to all nonprobationary teachers. *Id.* However, there is nothing expressed or implied in the statute limiting its application in this way and the Court finds no justification for such interpretation.

Accordingly, as Johnson does not dispute that she, otherwise, meets the conditions set forth in subsection 202(2)(c.5)(IV), the Court concludes that the subsection required Defendants to place Johnson on unpaid leave and, thus, Johnson has failed to allege sufficient facts demonstrating that her placement on unpaid leave supports a First Amendment retaliation claim. The Court respectfully recommends that the District Court grant Defendants' motion to dismiss Johnson's First Amendment claim based upon her placement on unpaid leave.

## II.    Due Process

Johnson contends that TECDA provides her a property interest in her employment that is protected by the Due Process Clause of the Fourteenth Amendment, and that she was denied due process when she was placed on unpaid leave without an opportunity to be heard.

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Brammer-Hoelter*, 492 F.3d at 1209 (quoting *Montgomery v. City of Ardmore*, 365 F.3d

926, 935 (10th Cir. 2004)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations marks omitted)). "For this reason, a hearing is generally required before a person may be deprived of a protected interest." *Id.* (citing *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 848 (1977)).

Courts must look to state law to determine whether a property interest in employment exists. *Id.* "Such an interest can arise from 'state statutes, regulations, municipal ordinances, university rules, and even express or implied contracts.'" *Id.* (quoting *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995)). "In the public employment context, the Supreme Court has recognized that a public employee may have a constitutionally cognizable property interest in continued employment if the employee is tenured pursuant to state law or if "there is a clearly implied promise of continued employment." *Heutzenroeder v. Mesa Cnty. Valley Sch. Dist. 51*, 391 F. App'x 688, 692 (10th Cir. Aug. 3, 2010) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1972)).

Defendants argue that Johnson has failed to allege sufficient facts to demonstrate a property interest in her salary and benefits. Johnson counters that her salary and benefits are not separate from her continued employment and, thus, the TECDA provides her a property interest through its dismissal procedure.

The applicable provision of the TECDA describes a specific procedure necessary to provide a teacher who is "dismissed" appropriate due process in adequate notice and an opportunity to be heard. *See* Colo. Rev. Stat. § 22-63-302(2)-(10). The issue here is whether Johnson was "dismissed" pursuant to the TECDA when she was placed on unpaid leave. The Court concludes

that she was not.

The TECDA defines "dismissal" as "the involuntary termination of employment of a teacher for any reason other than a justifiable decrease in teaching positions."  Colo. Rev. Stat. § 22-63-103(4).  In identifying permissive grounds for dismissal, the TECDA provides in pertinent part, "No teacher shall be dismissed for temporary illness, ***leave of absence previously approved by the Board***, or military leave of absence."  Colo. Rev. Stat. § 22-63-301 (emphasis added).

As set forth above, Johnson was placed on unpaid leave pursuant to subsection 202(2)(c.5)(IV) of the TECDA.  The statute requires that the Board place any nonprobationary teacher who is unable to secure a mutual consent position within 12 months or two hiring cycles, whichever is longer.  Johnson does not dispute that, as of September 1, 2012, she was unable to secure a mutual consent position within the time period allotted.

Rather, Johnson argues that, because she alleges she was deprived of a "substantial" property right in her salary and benefits by being placed on leave without an opportunity to be heard, she has stated a plausible due process claim.  Johnson points to no provision in the TECDA providing her a property right in her salary and benefits.  Instead, Johnson cites *Gabel v. Jefferson Cnty. Sch. Dist. R-1*, 824 P.2d 26, 28 (Colo. App. 1991) and *Bratton v. Dice*, 27 P.2d 1028, 1031-32 (Colo. 1933) for the proposition that the loss of salary and benefits constitutes a "substantial" deprivation of her property rights in employment.

In *Gabel*, the court of appeals was asked to determine whether a tenured teacher's two-day suspension with pay and no interruption of benefits constituted a deprivation of a property right.  824 P.2d at 28.  The court held that the two-day suspension was merely a *de minimis* deprivation and, thus, did not support a due process claim.  *Id.* at 28-29.  In so holding, the court distinguished

two cases relied upon by the plaintiff, one of which Johnson relies upon here – *Bratton, supra* – which "involved the infringement of substantial property rights, such as the loss of pay." *Id.* at 28.

In *Bratton*, the Colorado Supreme Court held that the suspension of a police officer without pay and without notice and an opportunity to be heard was unauthorized under the state constitution and Charter of the City and County of Denver. 27 P.2d at 1031-32. In so holding, the court noted that the state constitution provided, "[t]he police ... shall continue ... until they are severally discharged under such civil service regulations as shall be provided by the charter." *Id.* at 1030-31. Further, section 238 of the charter stated, "[a]ll persons ... shall retain their positions until discharged under the provisions hereof." *Id.* at 1031. Based upon this language, the court noted:

> To 'retain a position until discharged' does not mean to enjoy it occasionally or retain it intermittently. It means all it says, the full and unbroken enjoyment of that office until deprived of it my operation of law or due process. If any part of that tenure is suspended, it is not full enjoyment and the officer is not 'retained' until discharged.

*Id.* The court concluded that "if [the power to suspend] is thus included in the broader power [to remove] and exercised in the lesser degree, it must be on and under similar restrictions [notice and a hearing]. *Id.*

Unlike in *Bratton*, in this case, the TECDA does not include language that nonprobationary employees "shall retain their positions until discharged." Rather, subsection 202(2)(c.5) specifically states, in pertinent part, "for the fair evaluation of a principal based on the demonstrated effectiveness of his or her teachers ... a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school." Colo. Rev. Stat. § 22-63-202(2)(c.5)(I). Further, "[i]f a nonprobationary teacher is unable to secure a mutual consent assignment at a school of the school district after twelve months or two hiring

cycles, whichever period is longer, the school district shall place the teacher on unpaid leave until such time as the teacher is able to secure an assignment." Colo. Rev. Stat. § 22-63-202(2)(c.5)(IV). In other words, under the TECDA, to have an assignment in Colorado, a teacher must have the mutual consent of the hiring principal and at least two teachers; if the teacher cannot secure such mutual consent within the applicable time period, the teacher is placed on unpaid leave. There is nothing in the statute promising non-interruption of salary and/or benefits under the circumstances presented in subsection (IV).

Johnson argues that, so long as the TECDA places restrictions on the employer's discretion to take away employment, salary and benefits, the TECDA has created a property interest in such employment, salary and benefits. Johnson cites *Moore v. Middlebrook*, 96 F. App'x 634, 638 (10th Cir. Apr. 30, 2004), which in turn cites *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1254 (10th Cir. 1998), in support of her position. While both cases stand for the proposition that a property interest may be created where a statute places restrictions on the employer's discretion, the cases specify that such restrictions must be expressly placed on the action that is being challenged. *See, e.g., Hennigh*, 155 F.3d at 1254 ("If the statute or regulation places some substantive restrictions on the ***discretion to demote an employee***, such as providing that discipline may only be imposed for cause, then a property interest is created.") (emphasis added). Moreover, *Moore* affirms that "detailed procedural protections in a state statute or regulation are not sufficient to create a protected property interest." *Moore*, 96 F. App'x at 638 (citing *Hennigh*, 155 F.3d at 1254 ("[p]rocedural detail in a statute or regulation, standing alone, is not sufficient to establish a protected property interest in an employment benefit.")). As set forth above, the TECDA does not place restrictions on the Defendants' ability to place a teacher on unpaid leave, except to require it under certain

30

circumstances.  As such, the Court concludes that Johnson's placement on unpaid leave does not constitute a "dismissal" pursuant to the TECDA and, thus, did not require a pre-deprivation hearing.

Accordingly, the Court recommends the District Court find that Johnson has failed to allege a protected property interest sufficient to demonstrate a violation of due process in her placement on unpaid leave, and grant Defendants' motion to dismiss Johnson's due process claim.

## III.    Breach of Contract

If the District Court determines to grant Defendants' motions to dismiss Johnson's First and Fourteenth Amendment claims, then it may choose to decline supplemental jurisdiction over Johnson's breach of contract claims.  28 U.S.C. § 1367(c)(3); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").  However, in the event that the District Court chooses to exercise jurisdiction over the contract claims, this Court will proceed with an analysis of Defendants' motion.

"It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217-18 (D. Colo. 2011) (citing *Western Distributing Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992)).  Here, Johnson alleges the Defendants violated the TECDA by (1) terminating Johnson's salary and employment benefits without following the dismissal process set forth in Colo. Rev. Stat. § 22-63-302; and (2) failing to retain Johnson in a continuing "mutual

consent" position after Johnson prevailed in the 2008 administrative dismissal proceeding.

Defendants do not dispute that Johnson's allegations, taken as true, support the existence of a contract by alleging violations of TECDA (*see Julesburg Sch. Dist. No. RE-1 v. Ebke*, 562 P.2d 419, 421 (Colo. 1977)), but argue that Johnson has failed to allege sufficient facts to demonstrate they failed to perform on any contract with Johnson.  Specifically, Defendants claim that any contract action based upon conduct occurring following the ALJ's 2008 recommendation is time-barred, and that an action based upon Defendants' placing Johnson on unpaid leave in 2012 does not violate TECDA.

A.      "Mutual Consent" Position

In Colorado, breach of contract claims, except those seeking to recover a liquidated debt or an unliquidated, determinable amount of money, are governed by a three-year statute of limitations. Colo. Rev. Stat. § 13-80-101(1)(a); § 13-80-103.5(1)(a).  The parties do not dispute that Johnson's claims are subject to the three-year statute of limitations.

As set forth above, Johnson initiated this action on October 12, 2012; therefore, absent any applicable equitable considerations, all claims concerning conduct that occurred before October 12, 2009 would be time-barred.

Defendants argue that, following the ALJ's recommendation and Johnson's medical leave of absence, Defendants placed Johnson in a temporary assignment for the 2008-09 school year on or about May 18, 2009 and, thus, Johnson's claim regarding being retained in a "mutual consent" position is time-barred.  Johnson counters that Defendants violated the TECDA by failing to retain Johnson in a "mutual consent" position following the ALJ's recommendation on June 28, 2010 and June 10, 2011 when Defendants placed Johnson in temporary one-year-only positions, and on July

2, 2012 when Defendants notified Johnson that, if she did not obtain a "mutual consent" position through the school-based hiring process, she would be placed on unpaid administrative leave.

The Court concludes that, to the extent Johnson seeks recovery for claims based upon the following conduct, such claims should be barred by the statute of limitations: (1) Defendants' January 15, 2009 order retaining Johnson as a teacher on a one-year probation; (2) Defendants' May 2009 placement of Johnson in a temporary two-week assignment for the 2008-09 school year; and (3) Defendants' offer to place Johnson in a one-year position at Gust Elementary School for the 2009-10 school year. Accordingly, the Court respectfully recommends that the District Court find Johnson's contract claims based upon this conduct are time-barred, and that the District Court grant Defendants' motion to dismiss such claims.

Defendants also argue that a "mutual consent" position, as defined by the TECDA, did not exist before May 20, 2010. Plaintiff counters that, although a specific "mutual consent" position did not exist before the effective date of subsection (c.5), the type of assignment refers to a position that is "continuing" with the consent of the principal and the school board. The applicable portion of the TECDA does not specifically define a "mutual consent" assignment, but it does provide that

> each employment contract executed pursuant to this section shall contain a provision stating that *a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school* and chosen by the faculty of teachers at the school to represent them in the hiring process, and after a review of the teacher's demonstrated effectiveness and qualifications, which review demonstrates that the teacher's qualifications and teaching experience support the instructional practices of his or her school.

Colo. Rev. Stat. § 22-63-202(2)(c.5)(I) (emphasis added). The Court finds, only for purposes of this motion, that a "mutual consent" assignment is the equivalent of that defined by Johnson as a "continuing school-based hiring" assignment.

Johnson argues that she "was entitled to retain the ['continuing'] employment she had prior to the dismissal recommendation" (response brief, docket #26 at 3) and, thus, Defendants breached her contract by placing her on probation and, subsequently, in temporary one-year assignments. Defendants counter that the TECDA allowed them to place Johnson on a one-year probation and mentions nothing about a requirement thereafter to retain Johnson in a "continuing" position.

The Court agrees with Defendants.  Johnson alleges in the operative pleading,

> TECDA provides that, after the ALJ's recommended decision is issued, the board of education shall review the ALJ's findings of fact and recommendation and shall enter a written order either dismissing the teacher or retaining the teacher or retaining the teacher on a one-year probation. C.R.S. § 22-63-302(9). The school board is not required to adopt the ALJ's recommendation regarding the teacher's future employment. However, the ALJ's findings of fact are binding on the school board and the school board's order "must be supported by the (ALJ's) findings of fact." C.R.S. § 22-63-302(9) (emphasis added).

Complaint, ¶ 15, docket #13-1 at 7.  The actual language of subsection 302(9) of the TECDA provides:

> The board shall review the hearing officer's findings of fact and recommendation, and it shall enter its written order within twenty days after the date of the hearing officer's findings and recommendation. The board shall take one of the three following actions: The teacher be dismissed; the teacher be retained; or the teacher be placed on a one-year probation; but, if the board dismisses the teacher over the hearing officer's recommendation of retention, the board shall make a conclusion, giving its reasons therefor, which must be supported by the hearing officer's findings of fact, and such conclusion and reasons shall be included in its written order. The secretary of the board shall cause a copy of said order to be given immediately to the teacher and a copy to be entered into the teacher's local file.

Colo. Rev. Stat. § 22-63-302(9).  According to this subsection, Defendants were permitted to place Johnson on a one-year probation after ALJ Norcross issued her recommendation.  Further, Defendants were required to issue a written conclusion and its reasons supported by the hearing officer's findings of fact *only if* the Board determined to dismiss Johnson over the ALJ's retention

recommendation.  Here, the allegations reflect that Defendants did not dismiss Johnson in January 2009.

Nevertheless, the Court has already found that any claims based upon Defendants' placement of Johnson on probation and upon Defendants' offer of a one-year assignment for the 2009-10 school year are time-barred.  Thus, the question is whether Johnson has alleged sufficient facts demonstrating Defendants' subsequent 2010 and 2011 offers of one-year assignments violated the TECDA.  The Court concludes she has not.

Johnson argues that, had Defendants not recommended her for dismissal in 2008 (a recommendation determined to be "unjustified" by the hearing officer), she would have held a "continuing/mutual consent" position and would not have had the risk of being placed on unpaid leave pursuant to § 22-63-202(2)(c.5).  In essence, it appears that Johnson argues Defendants specifically placed her into temporary assignments so that she would become subject to the "unpaid leave" provision in subsection 202(2)(c.5).  However, Johnson refers to no provision in the TECDA requiring Defendants to place Johnson in a "continuing" position after either a retention recommendation or a one-year probation, and the Court has found none.  Rather, as set forth above, the statute specifies that "a teacher may be assigned to a particular school only with the consent of the hiring principal and with input from at least two teachers employed at the school."  Colo. Rev. Stat. § 22-63-202(2)(c.5)(I).  As Johnson argues, this statutory "concept" is the same as that practiced prior to the effective date of subsection 202(2)(c.5).  Therefore, the Court recommends that the District Court conclude Johnson fails to state a claim for breach of contract based upon the Defendants' conduct in placing her in one-year positions on June 28, 2010 and June 10, 2011, and grant Defendants' motion to dismiss such contract claims.

B.     Unpaid Administrative Leave

Johnson alleges the Defendants violated the TECDA with respect to her placement on unpaid leave in two ways: (1) Colo. Rev. Stat. § 22-63-202(2)(c.5)(IV) does not apply to Johnson; and (2) Defendants did not follow the dismissal procedure of Colo. Rev. Stat. § 22-63-302 when they placed her on unpaid leave without a hearing.  The Court will address each allegation in turn.

1.     Colo. Rev. Stat. § 22-63-202(2)(c.5)(IV)

As set forth above, the Court has determined that subsection 202(2)(c.5) applies to Johnson as a nonprobationary teacher who was unable to secure a mutual consent position after the longer of twelve months or two hiring cycles.  Therefore, as the statute required the Defendants to place Johnson on unpaid leave, they cannot be said to have violated the statute and, thus, breached a contract with Johnson.  Accordingly, the Court recommends that the District Court grant Defendants' motion to dismiss Johnson's breach of contract claim based upon a violation of Colo. Rev. Stat. § 22-63-202(2)(c.5)(IV).

2.     Colo. Rev. Stat. § 22-63-302

As set forth above, the Court has determined that Johnson's placement on unpaid leave is not a "dismissal" requiring a pre-deprivation hearing, as defined by and set forth in the TECDA. As such, the Defendants did not violate the TECDA when they placed Johnson on unpaid leave without a hearing.  The Court recommends that the District Court grant Defendants' motion to dismiss Johnson's breach of contract claim based upon a violation of Colo. Rev. Stat. § 22-63-302.

## CONCLUSION

Here, the Plaintiff has failed to state cognizable claims for First Amendment retaliation, violation of the Due Process Clause of the Fourteenth Amendment, and breach of contract in this

case.  Accordingly, the Court respectfully RECOMMENDS that Defendants' Motion to Dismiss

First Amended Complaint [filed December 17, 2012; docket #21] be **GRANTED** as set forth herein.

Respectfully submitted this 18th day of March, 2013, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge