**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 12-cv-02950-MSK-MEH

LISA M. JOHNSON,

        Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF
COLORADO; and
BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 1 IN THE COUNTY OF
DENVER AND STATE OF COLORADO,

        Defendants.

---

**OPINION AND ORDER ADOPTING THE RECOMMENDATION IN PART**
**AND GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court on the Recommendation (**#37**) of United States

Magistrate Judge Michael E. Hegarty that the Defendants' Motion to Dismiss (**#21**) be granted.

The Plaintiff Lisa M. Johnson filed timely Objections (**#42**) to the Recommendation, and the

Defendants Responded (**#49**) to her objections.

## I.  Background

Ms. Johnson initiated this action in Denver County District Court against the Defendants,

School District No. 1 in the County of Denver and State of Colorado (the District) and the Board

of Education of School District No. 1 (the Board).  The Defendants removed the action to this

Court pursuant to 28 U.S.C. § 1441(a).

The following factual allegations are derived from the Amended Complaint (**#13**).

Ms. Johnson has been employed as a teacher by the District since 1991.  She is qualified

to teach regular and special education students in pre-kindergarten through fifth grade.  From

1993 to 2008, she was employed in a continuing assignment as a teacher at Godsman Elementary School.  Throughout her employment, Ms. Johnson's performance was repeatedly evaluated. Prior to the 2007-08 school year, she consistently received satisfactory ratings in her evaluations.

In June 2008, the District, acting through its superintendent and administrators, issued a written recommendation to dismiss Ms. Johnson from her employment, pursuant to the Teacher Employment, Compensation, and Dismissal Act (TECDA), C.R.S. §§ 22-63-101, *et seq.*.  The grounds for dismissal were unsatisfactory performance, insubordination, neglect of duty, or "other good and just cause for dismissal."

The case was assigned to be heard by an Administrative Law Judge (ALJ).  After the hearing, the ALJ issued a Recommended Decision, finding that the school administrator's conclusions regarding Ms. Johnson's classroom instruction, classroom management, and classroom environment during the 2007-08 school year were not supported by credible evidence. The ALJ ultimately concluded that no grounds existed for Ms. Johnson's dismissal, and the ALJ recommended that Ms. Johnson be retained as a teacher.  On January 15, 2009, the Board entered a written order retaining Ms. Johnson as a teacher on a one-year probationary basis.

Thereafter, Ms. Johnson took a medical leave of absence.  She returned to work as a teacher in the District near the end of 2008-09 school year and was placed in a temporary assignment at Gust Elementary.  The District then assigned her to work as a reading intervention teacher at Gust for the 2009-10 school year.  The District informed her that the assignment was only for one school year.

During the 2009-10 school year, Senate Bill 10-191 was introduced before the Colorado General Assembly to amend the TECDA. Ms. Johnson interpreted the amendment to enable school districts to terminate teachers more easily without a hearing.  The District and Board

strongly supported Senate Bill 10-191, whereas the Colorado Education Association (CEA) and the Denver Classroom Teachers' Association (DCTA), among others, strongly opposed the bill. Ms. Johnson was, and is, a member of the CEA and DCTA.

In May 2010, Ms. Johnson was asked by CEA/DCTA to testify before the Colorado House of Representative Education Committee in opposition to Senate Bill 10-191.  During her testimony, Ms. Johnson recounted her experience of having been the "subject of an unjustified dismissal recommendation."  She argued that good teachers could lose their careers based on unjustified allegations if districts are permitted to terminate without a hearing.  Ms. Johnson believes that she was the only currently-employed District teacher to testify against the bill, and the only testifying teacher who had been the subject of a TECDA dismissal proceeding.[1]

Because her assignment at Gust was for a single year, in the spring of 2010 Ms. Johnson began looking for a permanent teaching assignment in the District through the District's school-based hiring process.  She reviewed postings on the District's website and applied for virtually all of the positions for which she was qualified, some 50 to 75 positions.  However, Ms. Johnson was not offered the opportunity to interview for any of the positions.  Ms. Johnson attended a District job fair where she interviewed for several available positions.  She was not offered any of the positions for which she interviewed.

In June 2010, the District placed Ms. Johnson in her same assignment as a reading intervention teacher at Gust Elementary for the 2010-11 school year.  Again she was informed that the assignment was for one year only.

In the spring of 2011, Ms. Johnson again began looking for a teaching assignment in the District through the school-based hiring process.  Again, she reviewed postings, applied for jobs, and attended a District job fair, but she was not offered any interviews or positions.  In June

---

[1] Senate Bill 10-191 was approved by the Governor and became effective on May 20, 2010.

2011, the District assigned her to work as a special education teacher at Greenwood Elementary for the 2011-12 school year.  Again, she was told that the assignment was for one year.

In the spring of 2012, Ms. Johnson again took up her search for a teaching assignment through the District's school-based hiring process.  And once again, she applied for several jobs and attended the job fair, but she was not offered an interview or a position.  In July 2012, the District notified her that if she did not find a teaching assignment through the school-based hiring process by August 26, 2012, she would be placed on "unpaid leave status."  Ms. Johnson was not able to obtain a position, and the District placed her on unpaid leave, effective September 1, 2012.  No hearing was held before Ms. Johnson was placed on unpaid leave.

Based on these events, Ms. Johnson asserts three claims for relief.  First, she brings two claims under 42 U.S.C. § 1983 — 1)deprivation of her right to free speech under the First Amendment of the United States Constitution;  and 2) denial of her right to due process under the Fourteenth Amendment of the United States Constitution.  In addition, she brings a state-law claim for breach of contract in violation of the TECDA.

The Defendants moved to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6). The matter was referred to the Magistrate Judge, who recommends that the motion be granted. Ms. Johnson objects to the Magistrate Judge's conclusions as to each of her claims.

## II.  Standard of Review

When a magistrate judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The district court shall make a *de novo* determination of those portions of the recommendation to which timely and specific

objection is made.  *U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations in the Amended Complaint (**#13**) as true and view those allegations in the light most favorable to Ms. Johnson.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at 1949-50.  The Court takes the remaining, well-pled factual contentions as true and ascertains whether those facts, coupled with the law establishing the elements of the claim, support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged.  *Id.* at 1950-51.  What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

5

### III.  Analysis

#### A.  First Amendment Retaliation Claim

Ms. Johnson alleges that the Defendants deprived her of her right to free speech under the First Amendment by taking "a continuing series of adverse employment actions" against her in retaliation for successfully participating in the dismissal proceeding against her, and for testifying before the Colorado Legislature in opposition to Senate Bill 191.

The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.  *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *see also Pickering v. Bd. Of Educ.*, 391 U.S. 563 (1968).  Thus, a public employer cannot retaliate against an employee for exercising her constitutionally protected right of free speech. *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).  When analyzing a free speech claim based on retaliation by an employer, the Tenth Circuit applies the five-prong *Garcetti/Pickering* test.  *Couch v. Board of Trustees of Memorial Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1235 (10th Cir. 2009).  Under the *Garcetti/Pickering* analysis, the Court must first determine whether the employee spoke pursuant to her official duties.  If so, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created.  Second, if an employee does not speak pursuant to her official duties, but rather as a citizen, then the Court must determine whether the subject of the speech is a matter of public concern.  If it is not, then the speech is unprotected and the inquiry ends.  Third, if the employee speaks as a citizen on a matter of public concern, then the Court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer.  Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that her speech was

a substantial factor or a motivating factor in a detrimental employment decision.  Finally, if the

employee establishes that her speech was such a factor, the employer may demonstrate that it

would have taken the same action against the employee even in the absence of the protected

speech.  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir.

2007) (internal quotations and alterations omitted).  Implicit in this analysis is the requirement

that the public employer have taken some adverse employment action against the employee.

*Belcher v. City of McAlester*, 324 F.3d 1203, 1207 n.4 (10th Cir. 2003).

Ms. Johnson alleges that she exercised her First Amendment right to speak in two ways:

(1) by participating in her dismissal hearing, and (2) by testifying before the Colorado

Legislature in opposition to Senate Bill 191.  Although the Court has some doubt as to whether

participation in a dismissal hearing can be considered speech on a matter of public concern, it is

satisfied that Ms. Johnson has sufficiently alleged that she engaged in protected activity when

she testified before the Colorado Legislature.  As to that allegation, the Defendants contend that

Ms. Johnson has failed to allege sufficient facts demonstrating that her speech was a substantial

or motivating factor in an adverse employment decision.

Under the fourth prong of *Garcetti*, Ms. Johnson must allege both a detrimental

employment decision (adverse employment action) and causation — that is, that the

constitutionally protected speech was a substantial motivating factor in the employer's decision

to adversely alter the employee's conditions of employment.  *Maestas v. Segura*, 416 F.3d 1182,

1188 & n.5 (10th Cir. 2005).  "[A]n adverse action for purposes of retaliation under the First

Amendment can be broader than adverse actions in the Title VII discrimination context."  *Couch*,

587 F.3d at 1237.  For example, promotions, transfers, recalls after layoff, hiring decisions,

forbidding teachers to speak with parents about school matters, blacklisting teachers from future

employment, removing an employee's job duties, issuing written reprimands, giving poor performance evaluations, and transferring an employee can all be actionable in the First Amendment context. *Id.* Consequently, courts should determine whether the defendant's specific actions would "deter a reasonable person from exercising his First Amendment rights." *Id.* at 1238.

Ms. Johnson alleges that the Defendants took the following adverse actions against her in retaliation for her First Amendment protected activity:

1. Interfered with her ability to obtain a "mutual consent" teaching assignment through the school-based hiring process in the spring of 2010 through June 2010;

2. Placed her in a temporary, one-year-only assignment in June 2010;

3. Interfered with her ability to obtain a "mutual consent" teaching assignment through the school-based hiring process in the spring of 2011 until June 2011;

4. Placed her in a temporary, one-year-only assignment in June 2011;

5. Interfered with her ability to obtain a "mutual consent" teaching assignment through the school-based hiring process in the spring of 2012 until the fall of 2012;

6. Placed her on an involuntary leave of absence without pay or benefits, effective September 1, 2012.

The Defendants argue that any alleged conduct that occurred prior to October 12, 2010 — two years before Ms. Johnson initiated this action — is barred by the statute of limitation. "Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules . . . ." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). The limitation period applicable to Ms. Johnson's § 1983 claims is Colorado's two-year statute of limitation, which bars suits filed more than two years after the case of action accrued. *See id.*

Ms. Johnson does not dispute that her claims are subject to the two-year statute of limitation, and thus, any claim seeking recovery for conduct that occurred prior to October 12, 2010 are time-barred.  There is no dispute that any claim based on the Defendants placing Ms. Johnson in a temporary, one-year assignment accrued on the day it happened.  Likewise, any interference with her ability to obtain a position would have accrued the day Ms. Johnson was rejected for a position for which she applied.  Thus, Ms. Johnson's claims must be limited to conduct that occurred after October 12, 2012.

As to her allegations of conduct occurring after October 12, 2010, the Court finds that Ms. Johnson has sufficiently alleged that the Defendants took an adverse employment action against her in retaliation for her speech.  Specifically, she alleges that the Defendants interfered with her ability to obtain a position, that they put her in a temporary position, and they put her on an involuntary leave of absence.  The Court expresses some doubt that Ms. Johnson's claim that the District interfered with her ability to obtain a position will withstand a motion for summary judgment.  However, it finds that her allegations that the District (presumably acting through the Board) took these actions against her are sufficient to survive a motion to dismiss.  With respect to Ms. Johnson being assigned to a temporary position and being put on unpaid leave, the Defendants argue that they were required to do so by statute, and thus the actions cannot be adverse employment actions.  Because this argument is in the nature of a defense to the claim, the Court declines to address it on a motion to dismiss.  For the stated reasons, the Court declines to adopt the Recommendation with regard to this claim.

### B.  Due Process Claim

Ms. Johnson alleges that the Defendants violated her right to due process under the Fourteenth Amendment by placing her on unpaid leave without an opportunity to be heard.

The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  To assess whether an individual was denied procedural due process, the Court engages in a two-step inquiry: (1) did the defendant's actions deprive the plaintiff of a protectable interest, and if so, then (2) was the individual afforded an appropriate level of process.  *Brammer-Hoelter*, 492 F.3d at 1209.

An individual has a property interest in a benefit for purposes of due process protection only if she has a "legitimate claim of entitlement" to the benefit, as opposed to a mere "abstract need or desire" or "unilateral expectation."  *Bd. of Regents v. Roth*, 408 U.S. 564, 570, 577 (1972).  Such an interest arises not from the Due Process Clause itself, but is "created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract."  *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007) (quoting *Carnes v. Parker*, 922 F.3d 1506, 1509 (10th Cir. 1991).  The plaintiff must demonstrate an "entitlement to a substantive right or benefit" supported by "rules or mutually explicit understandings . . . that he may invoke a hearing."  *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006).  Although the underlying interest is generally created by state law, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

Ms. Johnson alleges in her Complaint that she has a property interest in her employment salary and benefits.  She argues that the TECDA creates a protected property interest in continued employment, citing to *Howell v. Woodlin School Dist. R-104*, 596 P.2d 56 (Colo. 1979).  However, her reliance on *Howell* is misplaced.  In *Howell*, the Colorado Supreme Court

found that the plaintiff had a protected property interest in his continued employment because he was a tenured employee under the statute.  Ms. Johnson makes no allegation that she was tenured at the time she was placed on unpaid leave, nor does she cite to any other source that would give her entitlement to continued employment, salary, or benefits.  Thus, the Court finds that Ms. Johnson has not alleged a property interest on that basis.

However, as clarified in the briefing, Ms. Johnson also alleges that she has a property interest in the specific hearing procedure set forth in C.R.S. § 22-63-302 before she could be placed on unpaid leave.  Whether Ms. Johnson was entitled to such procedure depends on whether the statute applied to her circumstances as alleged in the Amended Complaint.  She relies on the applicability of the same statute in her breach of contract claim discussed below.  But because the applicability issue is common to both claims, the Court addresses it here.

Section 22-63-302 sets forth the procedure that a district and board must follow when a teacher has been recommended for dismissal, including the need for a hearing if the teacher objects to the grounds for dismissal.  Section 22-63-103 defines "dismissal" as the "involuntary termination of employment of a teacher for any reason other than a justifiable decrease in teaching positions."   Elsewhere, the statute provides that a district must place a nonprobationary teacher on unpaid leave if she does not obtain a mutual consent assignment at a school within two hiring cycles:

> If a nonprobationary teacher is unable to secure a mutual consent assignment at a school of the school district after twelve months or two hiring cycles, whichever period is longer, the school district shall place the teacher on unpaid leave until such time as the teacher is able to secure an assignment. . . .

C.R.S. § 22-63-202(2)(c.5)(IV).  Reading the statute as a whole and interpreting it in a manner so as not to render words or phrases superfluous, *see People v. Cross*, 127 P.3d 71, 73-74 (Colo.

11

2006), it is clear that the General Assembly intended for § 22-63-302 to apply only to individuals who are recommended for dismissal, which is distinct from being placed on unpaid leave. Indeed, the statute does not provide for any specific process to be given an individual placed on leave. Thus, the only way Ms. Johnson could have an entitlement to the process set forth in § 22-63-103 is if she was dismissed within the meaning of the statute, rather than placed on unpaid leave under § 22-63-202(2)(c.5)(IV).

The Defendants argue that, Ms. Johnson was indeed placed on unpaid leave as required by subsection (c.5)(IV), cited above.  Ms. Johnson admits that her circumstances fall within the parameters of subsection (c.5)(IV).  However, she alleges that subsection (c.5)(IV) does not apply to her because she was not displaced for any of the reasons set forth in subsection (c.5)(VII).

Subsection (c.5)(VII) states that paragraph (c.5) "shall apply to any teacher who is displaced as a result of drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation, or reconstitution."  Ms. Johnson argues that the rule, "the express of one excludes the other," applies here, and thus, paragraph (c.5) applies *only* to teachers described in subsection (c.5)(VII).  The Defendants do not dispute that Ms. Johnson does not fall within subsection (c.5)(VII).  Rather, they contend that subsection (c.5)(IV) applies to all nonprobationary teachers, including Ms. Johnson.

In examining the plain language of the statute read as a whole, *see Springer v. City & Cnty. of Denver*, 13 P.3d 794, 799 (Colo. 2000), the Court finds that the General Assembly intended subsection (c.5)(IV) to apply to all nonprobationary teachers.  Subsection (c.5)(I) refers to "teachers" without any reference to teachers who may have been displaced for the reasons listed in subsection (c.5)(VII).  Likewise, subsections (c.5)(II)(A) and (c.5)(III)(A) refer to "any

active nonprobationary teacher." However, subsections (c.5)(II)(B) and (c.5)(III)(B) specifically refer to teachers who have been displaced for the reasons set forth in subsection (c.5)(VII). If the statute were construed as Ms. Johnson suggests, then there would be no need for the legislature to carve out specific requirements for teachers displaced as set forth in subsection (c.5)(VII). Finally, subsection (c.5)(VII) does not contain any language indicating an intent that the list is exhaustive. Ms. Johnson does not dispute that she, otherwise, meets the requirements of subsection (c.5)(IV). Thus, the Court finds that, under the facts as alleged in the Amended Complaint, Ms. Johnson was not dismissed within the meaning of the statute, but instead was placed on unpaid leave. As such, she was not entitled to the procedures set forth in section 22-63-302 before being placed on leave.

Alternatively, Ms. Johnson argues that section 22-63-302 applies because when she was placed on leave, and denied her work, salary, and benefits, she was effectively dismissed. Although the effect of being placed on unpaid leave is similar to dismissal, the statute treats the two differently. The former circumstance does not give rise to a hearing (presumably because it is status based) and the latter circumstance requires a hearing (presumably because there are facts to be proven). Ms. Johnson has not pointed to any other source that gives her entitlement to a hearing before being placed on unpaid leave. Accordingly, the Court finds that as alleged, Ms. Johnson has failed to state a claim for violation of her due process rights, and her claim must be dismissed.

### C.  Breach of Contract

Ms. Johnson brings this claim as a breach of contract claim. She asserts that the TECDA, C.R.S. §§ 22-63-101, *et seq.*, creates a contract by operation of law, and that a teacher covered by the TECDA may bring a breach of contract action to enforce the provisions of the TECDA.

Ms. Johnson alleges that the Defendants violated the TECDA when (1) they placed her on unpaid leave without following the procedures in C.R.S. § 22-63-302; and (2) they placed her in a series of temporary, one-year-only assignments.[2]

It is far from clear to the Court whether this claim is properly brought as a breach of contract claim, or whether it is merely a repetition of the § 1983 due process claim discussed above. However, the Court declines to parse the issue, because under either theory, the outcome depends entirely on the applicability of the statute.

The Court has concluded that that § 22-63-302 did not apply to Ms. Johnson because she was not dismissed. Thus, even if the terms of TECDA are treated as contractual terms, there is no viable claim for breach based on nonconformance with § 22-63-302.

Next, Ms. Johnson alleges that the Defendants violated the TECDA when they placed her in a series of temporary assignments. However, the Complaint does not specify what provision of the TECDA prohibited the Defendants from doing so. In her response, Ms. Johnson appears to argue that although she was not "dismissed" after prevailing in the dismissal proceeding against her (in 2008), the Defendant did not properly "retain" her under C.R.S. § 22-63-302(9) because she was placed in temporary positions.

As noted above, section 22-63-302 sets forth the procedure required when a teacher has been recommended for dismissal. Under subsection (9), if a hearing is held, the board must review the hearing officer's findings and recommendations, and then it shall take one of the following three actions: "The teacher be dismissed; the teacher be retained; or the teacher be placed on a one-year probation." C.R.S. § 22-63-302(9).

---

[2] Ms. Johnson concedes that a three-year statute of limitation applies, and thus, her claim relates only to conduct that occurred after October 12, 2009.

Contrary to her own assertion that she was "retained" by the Board, Ms. Johnson admits in her Amended Complaint that after the dismissal proceeding, she was placed her on one-year probation.  Because she was put on probation, Ms. Johnson could not have been "retained" within the meaning of the statute.  Ms. Johnson has not cited to any statutory language that would have required the Board to re-assign her to her continuing assignment position while on probation, or at any time thereafter.  Accordingly, the Court finds that Ms. Johnson has failed to state a claim that the Defendants breached a contract with her, or violated the TECDA, on the basis that they placed her in temporary positions.  Her claim must be dismissed.

## IV.  Conclusion

For the forgoing reasons, the Court **DECLINES** to adopt the Recommendation of the United States Magistrate Judge (**#37**) in its entirety.  The Defendants' Motion to Dismiss (**#21**) is **GRANTED IN PART AND DENIED IN PART**.  Ms. Johnson's due process claim and breach of contract (violation of the TECDA) claim are dismissed.  Her retaliation claim under the First Amendment is the sole claim going forward in this action.

Also pending before the Court is Ms. Johnson's Motion for Leave to Amend Complaint (**#40**), in which she seeks to amend four paragraphs of her Amended Complaint.  The matter was referred to the Magistrate Judge, who issued a Recommendation (**#54**) that the motion be granted in part and denied in part.  Ms. Johnson and the Defendants both object (**#57, 58**) to the Recommendation.

Having reviewed the Recommendation and the motion *de novo*, the Court finds that Ms. Johnson's proposed amendments do not unduly prejudice the Defendants, nor do they alter the Court's analysis with regard to the motion to dismiss.  Accordingly, the Court **DECLINES** to adopt the Recommendation of the United States Magistrate Judge (**#54**), and the Plaintiff's

Motion for Leave to Amend Complaint **(#40)** is **GRANTED**.  The Second Amended Complaint (filed as Exhibit A to the Motion for Leave to Amend) is accepted as the operative pleading in this matter.  However, for the reasons stated in this Order, the Plaintiff's due process claim and breach of contract claim (violation of the TECDA) are dismissed.  No further motions for leave to amend the complaint will be granted.

    Dated this 23rd day of September, 2013.

                    **BY THE COURT:**

                    _____

                    Marcia S. Krieger
                    Chief United States District Judge