IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02950-MSK-MEH

LISA M. JOHNSON,

    Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF COLORADO, and BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 1,

    Defendants.

## ORDER ON MOTION TO QUASH

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is a Motion to Quash Subpoena Duces Tecum Served upon Non-Party Witness Susan Greene and for Protective Order [filed December 27, 2013; docket # 80]. The motion is referred to this Court for disposition. (Docket # 82.) The matter is fully briefed, and oral argument would not assist the Court in its adjudication. For the reasons that follow, the Court **GRANTS** the motion to quash.

**I.    Background**

Plaintiff Lisa Johnson ("Johnson") initiated this action on October 12, 2012 in Denver County District Court against School District No. 1 in the County of Denver and State of Colorado ("District") and the Board of Education of School District No. 1 ("Board") (collectively "Defendants"). (Docket # 4.) In essence, Johnson claims that Defendants violated her rights to freedom of speech under the First Amendment and to due process under the Fourteenth Amendment, and her rights under the Teacher Employment, Compensation and Dismissal Act ("TECDA"), Colo. Rev. Stat. § 22-63-101 *et seq.* by assigning her to unfavorable positions and placing her on unpaid

leave at the commencement of the 2012-13 school year.

On November 9, 2012, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a) governing federal question jurisdiction. (Docket # 1.) Then, pursuant to Fed. R. Civ. P. 15(a), Plaintiff filed as a matter of course a First Amended Complaint and Jury Demand on December 4, 2012. (Docket # 13.) In response, Defendants filed a motion to dismiss the amended pleading, which was referred to this Court for recommendation. (Dockets ## 21 and 25.) On March 18, 2013, this Court issued a Report and Recommendation that the District Court grant Defendants' motion to dismiss the Amended Complaint based upon various grounds. (Docket # 37.)

On September 23, 2013, the Honorable Marcia S. Krieger adopted this Court's recommendation to dismiss the due process and TECDA claims, but permitted the First Amendment retaliation claim to proceed and granted the Plaintiff leave to amend four paragraphs of the operative pleading. (Order, docket # 65.) Accordingly, the Second Amended Complaint (docket # 66), minus the due process and TECDA claims, is the operative pleading in this case. (*See id.* at 15-16.) The pleading alleges generally that Defendants engaged in a series of adverse employment actions culminating in her eventual termination as a teacher for the school district. (*See* docket # 66.) Plaintiff claims that Defendants took these various adverse actions in retaliation for her May 6, 2010 testimony before the Colorado legislature opposing the passage of Senate Bill 10-191, which Defendants strongly supported. (*Id.*)

The present motion was filed on December 27, 2013 by a non-party witness, Susan Greene, seeking an order to quash a subpoena duces tecum served upon her by the Plaintiff and to prevent her from disclosing information allegedly protected by the First Amendment to the United States Constitution. Greene, a former columnist for the *Denver Post* newspaper, argues that Plaintiff's subpoena seeks to compel her "to testify to information she obtained while gathering news, and

more specifically to identify sources who are not named in her column," which was published three days after Plaintiff testified before the Colorado legislature. (Motion, docket # 80 at 5.) Greene contends that her information and sources are not only irrelevant to Plaintiff's retaliation claim, but also that the Plaintiff has failed to exhaust alternative sources of the requested information. Greene also asserts that her First Amendment concerns outweigh the Plaintiff's need, if any, for the information.

Plaintiff counters that any reporter's privilege is overcome in this case by the relevance of the information to her First Amendment claim and by the fact that she has been unable to obtain the information from other sources. Plaintiff asserts that, according to the content of Greene's article, Defendants' administrators provided Greene not only oral information concerning the Plaintiff's employment, but also personnel documents pertaining to the Plaintiff; Plaintiff claims such conduct is directly in contravention of Defendants' policies and procedures, and demonstrates improper retaliatory conduct just days after Plaintiff testified concerning Senate Bill 10-191. Plaintiff states that she has attempted to obtain the information directly from the Defendants through discovery, but the Defendants claim they have no knowledge of any employee speaking with Greene – other than Defendants' communications director – or providing Greene with personnel documents. Plaintiff also deposed the communications director, but he denies providing Greene with any documents and provided her only limited information about the Plaintiff. Plaintiff argues that the circumstances of her case are distinguishable from those cases cited by Greene, and more akin to cases in which the reporter's privilege was overcome.

Greene replies that any statements made by Defendants' personnel in the May 9, 2010 article are not adverse employment actions and were not part of any pattern of adverse employment action; as such, Greene argues the relevance of information underlying the article is marginal. Greene also

contends that Plaintiff has not exhausted other information sources in failing to take the depositions of persons involved in the development of and advocacy for Senate Bill 10-191. Finally, Greene asserts that she should not be ordered to provide testimony that would breach a promise of anonymity unless and until the District Court rules on issues raised in Defendants' motion for summary judgment regarding the alleged adverse employment actions.

The Court has reviewed the motion, briefs and exhibits and is now fully advised on the premises.

**II.    Analysis**

The Tenth Circuit has recognized the application of a "reporter's privilege" under the First Amendment to civil cases. *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977). "To overcome the newsperson's privilege under the First Amendment, the party seeking information from a reporter has the burden of showing that 1) the information sought is centrally relevant, and 2) the information is unavailable from other sources." *Re/Max Int'l, Inc. v. Century 21 Real Estate Corp.*, 846 F. Supp. 910, 911 (D. Colo. 1994) (citing *Silkwood*, 563 F.2d at 438). In fact, the Tenth Circuit has interpreted its opinion in *Silkwood* as follows:

> when the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure. *Silkwood*, 563 F.2d at 438. Among the factors that the trial court must consider are (1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3) whether the information is available from other sources; and (4) the nature of the information. *See id.* The trial court must also determine the validity of the claimed First Amendment privilege. Only after examining all of these factors should the court decide whether the privilege must be overborne by the need for the requested information.

*Grandbouche v. Clancy*, 825 F.2d 1463, 1466-67 (10th Cir. 1987). While *Grandbouche* specifically addressed a First Amendment ***associational*** claim, the *Grandbouche* factors are meant to permit a court to balance the need for First Amendment protection (without regard to the subject matter of

4

the privilege) with the need for discovery and, thus, this Court finds it appropriate to apply the factors here, where Greene asserts protection under the reporter's privilege. *See Price v. Time, Inc.*, 416 F.3d 1327, 1343 (11th Cir. 2005) (citing *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir.), *modified on reh'g*, 628 F.2d 932 (5th Cir. 1980)).

   A.   Validity of Claimed First Amendment Privilege

Essentially, the reporter's privilege protects from disclosure certain information gathered by news reporters. *Id.* Here, the parties do not dispute that Greene intended to use the information gathered by sources, the identities of whom are now sought by the Plaintiff, for the dissemination of such information to the public throughout the newsgathering process. *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987). Accordingly, Greene is entitled to invoke the reporter's privilege with respect to the information Plaintiff seeks in this case.

   B.   Relevance of the Evidence

For this factor, the Plaintiff must demonstrate that "the information sought is centrally relevant." *Re/Max Int'l, Inc.*, 846 F. Supp. at 911. If the information sought has "questionable relevance, this weigh[s] in favor of protection." *Silkwood*, 563 F.2d at 438. However, if the party claiming the First Amendment privilege has placed the information at issue into the lawsuit, then the information may become relevant and disclosure may be appropriate. *See Grandbouche*, 825 F.2d at 1466-67.

Here, Greene is not a party to the case and did not place the information at issue into the lawsuit. However, the Plaintiff claims that, three days after she testified before the Colorado legislature opposing passage of Senate Bill 10-191, which Defendants strongly supported, Greene published a column concerning the bill and Plaintiff's testimony. Plaintiff asserts that the content of the column (Response, Exh. C, docket # 85-3), a later email message from Greene (Response,

Exh. D, docket # 85-4), and Greene's declaration attached to the present motion (docket # 81) suggest that employees of the Defendants made negative statements to Greene concerning the Plaintiff's performance as a teacher for the school district and provided copies of Plaintiff's confidential personnel documents to Greene, which are in contravention of the school district's policies and practices and which amount to adverse employment actions against the Plaintiff. Based upon the column, email message and declaration, Plaintiff lists 18 "facts" constituting "evidence" that Defendants' employees made such negative statements and supplied Greene with copies of personnel documents:

> 1) One or more agents or employees of the Defendants provided personnel documents pertaining to Ms. Johnson, including documents related to Ms. Johnson's dismissal proceeding, to Susan Greene;
>
> 2) Multiple administrators of the Defendant School District orally provided personnel information pertaining to Ms. Johnson, including information about Ms. Johnson's evaluations, performance and dismissal proceeding, to Susan Greene;
>
> 3) One or more administrators of the Defendant School District provided information to Susan Greene, and/or took actions, which enabled Ms. Greene to speak with particular teachers employed by the Defendant District about Ms. Johnson and their opinions of her performance as a teacher in the District;
>
> 4) One or more administrators or other employees of the Defendant School District provided information to Susan Greene, and/or took actions, which enabled Ms. Greene to speak with particular parents of Ms. Johnson's former students about Ms. Johnson and their opinions of her performance as a teacher in the District;
>
> 5) Multiple administrators of the Defendant School District told Susan Greene that Ms. Johnson falls among a group of 10% to 25% of teachers who either are ineffective or are considered ineffective or should or might be considered ineffective. (The specifics of the administrators' statements are unclear from Susan Greene's article.);
>
> 6) One or more administrators of the Defendant School District told Susan Greene that the District did not want to assign Ms. Johnson to another classroom in May 2010;
>
> 7) One or more administrators of the Defendant School District told Susan Greene that Ms. Johnson was earning $65,000/year in May 2010;

8) One or more administrators of the Defendant School District told Susan Greene that the District was required to continue paying Ms. Johnson's salary indefinitely whether she continued teaching or not;

9) One or more administrators of the Defendant School District told Susan Greene that, in 2007, the question of "what to do with Johnson arose" in the School District;

10) One or more administrators of the Defendant School District told Susan Greene that the District conducted two years' of evaluations and related meetings to address Ms. Johnson's performance problems before bringing dismissal charges against her;

11) One or more administrators of the Defendant School District made statements to Susan Greene which led Ms. Greene to conclude that District administrators had to "jump through" two years of "hoops" in order to bring dismissal charges against Ms. Johnson;

12) One or more agents or employees of the Defendant School District made statements to Susan Greene which led Ms. Greene to use the phrase, "kids being taught by the Lisa Johnsons", to refer to students being taught by ineffective teachers;

13) One or more agents or employees of the Defendant School District made statements to Susan Greene which led Ms. Greene to conclude that Ms. Johnson was "not making the grade" as a teacher in the Defendant District;

14) One or more agents or employees of the Defendant School District made statements to Susan Greene which led Ms. Greene to conclude that Ms. Johnson is not a "uniquely bad" teacher because there are many other bad teachers;

15) One or more agents or employees of the Defendant School District made statements to Susan Greene which led Ms. Greene to conclude that Ms. Johnson is one of the few ineffective teachers who was "actively challenged for her performance" by her school district;

16) One or more agents or employees of the Defendant School District made statements to Ms. Greene which led Ms. Greene to conclude that the Defendants had been unable to dismiss Ms. Johnson from her employment due to problems with the applicable legal standards and definitions, not because the allegations against Ms. Johnson were untrue or because Ms. Johnson was not an unsatisfactory teacher;

17) One or more agents or employees of the Defendant School District made statements to Susan Greene which led Ms. Greene to conclude that Ms. Johnson won her dismissal case because a teacher cannot be dismissed unless he or she is caught committing child abuse or possessing child pornography; and

18) One or more administrators of the Defendant School District made statements

> to Susan Greene which led Ms. Greene to write that Ms. Johnson has been allowed to continue teaching, "at least for now."

Response, docket # 85 at 4-6. Plaintiff argues that the identities of Defendants' employees and whether they provided Greene statements and/or documents is relevant to show Defendants' retaliatory animus.

Greene counters that the "evidence" Plaintiff has gleaned is merely speculative as to whether Defendants' employees supplied Greene with statements and/or documents for her column. Greene contends that most of the factual information revealed in her column about the Plaintiff could be obtained from Plaintiff herself as well as from public records, including records from Plaintiff's dismissal hearing, which Greene had obtained through a Colorado Open Records Act ("CORA") request. Greene attaches copies of records from the hearing demonstrating that certain quotes in her column were likely taken from such records. *See, e.g.,* DPS Closing Argument, ¶ 6, docket # 96-1 at 4 ("Ms. Johnson remarked that she was 'tired of teaching' and 'just doing it until she thought of something else to do.'") and Greene Column, May 9, 2010, docket # 85-3 at 1 ("Godsman Elementary's assistant principal reported Johnson had complained she was 'tired of teaching and was just doing it until she found something else to do,' court papers show.").

The Court finds that Greene's column does not provide persuasive evidence supporting 17 out of the 18 "facts" listed by the Plaintiff. For example, there is nothing in Greene's column reflecting that she received any documents from any school district employee. As she, herself, admits, Greene requested and received Plaintiff's "file and read the evidence" through a CORA request. June 7, 2010 Email Message, Exh. D to Plaintiff's Response, docket # 85-4. Accordingly, facts ## 1 and 2 do not support Plaintiff's contention that information possessed by Greene is centrally relevant to this case.

Likewise, there is nothing in the column supporting facts ## 3 and 4; however, Greene

8

asserted after the publication of her column that she "interviewed several DPS personnel, including fellow teachers and parents of former students." *Id.* Nevertheless, the Court agrees with Greene that it is only speculative whether District personnel provided Greene any information concerning such teachers and parents; Greene, as a journalist, certainly could discover such information on her own, particularly as she possessed copies of Plaintiff's dismissal hearing documents and was present for Plaintiff's testimony (as were many people, including teachers and parents) at the May 6, 2010 legislative hearing. Thus, facts ## 3 and 4 do not support Plaintiff's contention that information possessed by Greene is centrally relevant.

Moreover, a reading of Greene's column reveals that, as expected from any such type editorial column, the article consists primarily of Greene's opinion based upon her own gathering of information from documents and interviews. There is nothing indicating that Greene derived her opinions specifically from one or more employees of the District, as opposed to a reading of the records she received through a CORA request or from interviews with other persons. *See, e.g.,* Greene Column, docket # 85-3 at 2 ("Some might say Johnson has it made."; "The problem is that teacher effectiveness is nearly impossible to gauge."; "If you can't fire Johnson, I'd argue, you can't fire any tenured teacher who's not been caught smacking students or stashing kiddie porn in the closet."; "Johnson may not be the best teacher in Colorado. She isn't uniquely bad, either."). Accordingly, the Court is not convinced that facts # 6 and ## 9-18 support Plaintiff's contention that information possessed by Greene is centrally relevant to Plaintiff's First Amendment retaliation claim.

Further, facts ## 7 and 8 reveal only that Greene had access to public information – that is, the salary information for teachers in Denver Public Schools is available on the District's website at http://hr.dpsk12.org/dcta_salary_schedule. Likewise, whether "the District was required to

continue paying Ms. Johnson's salary indefinitely" could be ascertained by reviewing the law in effect before the passage of Senate Bill 10-191.

Finally, with respect to fact # 5, the Court acknowledges Greene's concession that she "did speak to certain Denver Public Schools 'administrators' concerning the subject matter of [the] May 9, 2010 column." Greene Declaration, ¶ 4, docket # 81. In her column, after bemoaning what Greene asserts is a lack of a definition in the law for "unsatisfactory performance," Greene states, "Administrators say [Johnson] falls among a broader group of 10 percent to 25 percent of tenured teachers who might be considered ineffective, if anyone bothered with a definition." Greene Column, docket # 85-3 at 2. Plaintiff's fact # 5 states, "[m]ultiple administrators of the Defendant School District told Susan Greene that Ms. Johnson falls among a group of 10% to 25% of teachers who either are ineffective or are considered ineffective or should or might be considered ineffective." While the Court questions Plaintiff's use of the term, "multiple," to the extent the Plaintiff asserts this fact as evidence that Greene knows the identity(ies) of the administrator(s) who, in contravention of District policies and practices, told Greene "Johnson falls among a broader group of 10 percent to 25 percent of tenured teachers who might be considered ineffective," the Court finds such information centrally relevant to Plaintiff's allegation that Defendants acted with a retaliatory motive.

C. Nature of the Information

Greene contends that any statements made to her by District administrators do not constitute adverse employment actions, but are simply opinions that are protected by the First Amendment. With respect to Greene's first contention, the Court finds that the question whether District statements made to Greene constitute adverse employment actions is not properly before this Court; rather, the question is appropriately addressed in a motion for summary judgment or at trial.

10

However, as to whether the administrator's statements are simply opinions, the Court finds that it is of no consequence. As with a stated "fact," a stated opinion can certainly, and typically does, reflect a person's motivation for speaking or taking action.

Likewise, Greene argues that, unlike in this case, cases where reporters were ordered to disclose their sources involved "first-hand observation of the alleged civil wrongdoing." Reply, docket # 18 at 96. The Court disagrees; here, to the extent the administrators' statements might reveal their motivations, Greene was a first-hand witness to such statements. Accordingly, the Court finds that the nature of who made the statement, "Johnson falls among a broader group of 10 percent to 25 percent of tenured teachers who might be considered ineffective" weighs in favor of disclosure.

        D.      <u>Necessity of Receiving the Information Sought</u>

Plaintiff argues that she needs to discover the identities of the administrators who spoke with Greene about Plaintiff's employment in contravention of District policies, so that she may determine whether the administrators acted with a retaliatory motive. Greene counters that, even if the administrators' statements are relevant and her testimony is necessary to prove the Plaintiff's case, Greene should not be ordered to breach a canon of ethics by disclosing sources before the District Court resolves the pending motion for summary judgment and rules whether the alleged conduct by Defendants constitute adverse employment actions; whether the alleged actions were taken pursuant to official policy or custom; whether the decision-makers knew of Plaintiff's testimony before the state legislature; whether the Defendants' actions were taken pursuant to statute; and whether, regardless of Defendants' motivation, the actions would have occurred. Greene cites both state and federal cases for the proposition that "the adequacy of plaintiff's proof of elements that do not require the testimony of a non-party journalist must be tested before the journalist may be required

to testify on other issues." Reply, docket # 96 at 21.

Although Greene raises a compelling argument, the Court is not necessarily persuaded that Greene's cited cases *require* this Court to make determinations on the issues raised in the pending motion for summary judgment before ordering disclosure. In *Gordon v. Boyles*, 9 P.3d 1106, 1116-17 (Colo. 2000), the court analyzed whether disclosure was proper pursuant to a state statute governing a newsperson's privilege, and in *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, No. 09-cv-00717-CMA-BNB, 2010 WL 363368, at *3 (D. Colo. Jan. 27, 2010), the district court noted that it "expresses no opinion as to whether disclosure would be required if the amended complaint survives Defendants' motion to dismiss." However, the Court acknowledges that resolving issues related to the privileged information before ordering disclosure aligns with the policy underlying the reporter's privilege that the compelled production of a reporter's sources or materials be a "last resort" because it "may substantially undercut the public policy favoring a free flow of information to the public that is the foundation of the privilege." *See U.S. v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980).

Here, in ruling on Defendants' motion to dismiss, Judge Krieger determined that Defendants' alleged actions of placing Plaintiff in a temporary assignment in June 2011, interfering with her ability to obtain a mutual consent assignment in the spring 2012, and placing her on an involuntary leave of absence effective September 1, 2012 constitute "adverse actions" under the First Amendment, but expressed "some doubt that Ms. Johnson's claim that the District interfered with her ability to obtain a position will withstand a motion for summary judgment." Order, docket # 65 at 9. Judge Krieger neither addressed, nor even mentioned, the other issues raised in the pending motion for summary judgment.

Nevertheless, the Court concludes that the question to be answered for this factor is whether

the Plaintiff *needs* to obtain the identities of administrators who spoke to Greene in order to prove a retaliatory motive. Plaintiff contends that she needs the administrators' identities to demonstrate a close temporal proximity between her protected conduct (testifying at legislative hearing) and the adverse actions (statements to Greene in violation of District policy), so she may then show the adverse actions are part of a pattern of retaliatory conduct that began shortly after the protected activity. Response, docket # 85 at 20-21. Greene counters that even if the administrators' statements could be considered adverse actions under the First Amendment, they do not constitute a pattern of retaliatory conduct because they were (1) made on a solitary isolated occasion and (2) of a different character than the adverse employment actions at issue here.

Again, whether the statements to Greene constitute a portion of a pattern of retaliatory conduct is an issue to be determined by the fact finder after admission of evidence in this case. It is not for this Court to decide. Consequently, for purposes of this factor, the Court must conclude that issues of material fact may exist concerning whether Plaintiff needs the administrators' identities and, thus, the factor weighs in favor of neither withholding nor disclosing the information.

E. Whether Plaintiff Exhausted Other Sources

Notwithstanding the foregoing, the Court finds that Plaintiff has not demonstrated that she exhausted other sources of the information she seeks from Greene. The reporter's privilege is meant to "protect the important interests of reporters and the public in preserving the confidentiality of the journalists' sources"; thus, "disclosure may be ordered only upon a clear and specific showing that the information is ... not obtainable from other available sources." *In re Petroleum Prods. Antitrust Litigation*, 680 F.2d 5, 7-8 (2d Cir.), *cert. denied*, 459 U.S. 909 (1982).

In this case, for Plaintiff to establish a pattern of retaliatory conduct, she must show that the persons who engaged in or were responsible for the adverse actions taken against Plaintiff (i.e.,

decision makers) were responsible for all conduct making up the pattern of retaliation. Therefore, the Plaintiff must show that the persons who placed her in a temporary assignment in June 2011, interfered with her ability to obtain a mutual consent assignment in the spring 2012 and placed her on an involuntary leave of absence effective September 1, 2012 (Order, docket # 65 at 9) were the same as those who gave statements to Greene.

Plaintiff asserts that she submitted written discovery requests to the Defendants seeking the identities of administrators who spoke to Greene; Defendants responded that Communications Director, Michael Vaughn, spoke briefly to Greene regarding the Plaintiff. Plaintiff then took Vaughn's deposition, but he testified that he merely gave a summary of the District's "feelings" about the dismissal hearing and may have directed Greene to the Office of Administrative Courts, to which she later submitted a CORA request for documents. Plaintiff states that she also deposed "six other administrators" of the District – the school's principal, its assistant principal and four human resources personnel – all of whom testified they had no knowledge of anyone speaking with Greene. Importantly, though, Plaintiff makes no mention of whether she contacted or deposed any person responsible for her placement in a temporary assignment in June 2011 or on an involuntary leave of absence effective September 1, 2012, or for interference with her ability to obtain a mutual consent assignment in the spring 2012. To the extent that any or all of the persons Plaintiff deposed were the decision makers in this case, then Plaintiff has her answer.

Moreover, as Greene points out, there were other District administrators who were more involved in the process for passage of Senate Bill 10-191, with whom Greene likely would be interested in speaking for her column. Vaughn testified that the District chief of staff's office oversees legislative affairs (Deposition of Michael Vaughn, December 11, 2013, 48: 7-21, docket # 96-6), and Bart Muller, Human Resources, testified that the District superintendent and "Shayne

14

Spalten," his supervisor, had involvement in "dealing with the bill as it went through the legislature." Deposition of Bart Muller, December 10, 2013, 30: 10-21, docket # 96-7. Accordingly, because Greene is not the only source for the information Plaintiff seeks, this important factor is not met. *See Re/Max Int'l, Inc.*, 846 F. Supp. at 912 (granting a motion to quash concluding that, under *Silkwood*, if the reporter is not the only available source for the requested information, the party seeking the information fails to meet the second prong of the *Silkwood* test); *see also Price*, 416 F.3d at 1347 (finding plaintiff failed to exhaust all available sources and recognizing the possibility that persons under oath may not tell the truth, but the court must assume testimony under oath will be truthful).

### III. Conclusion

Accordingly, although Plaintiff demonstrates that the information she seeks from Greene is relevant to a central issue in her case, she fails to demonstrate that she cannot obtain the information from other available sources. Therefore, the Court **GRANTS** the Motion to Quash Subpoena Duces Tecum Served upon Non-Party Witness Susan Greene and for Protective Order [filed December 27, 2013; docket # 80].

Dated at Denver, Colorado, this 25th day of February, 2014.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge